UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
MICHAEL MAXIMILIAN WOLFGANG      :
ROGGENBACH,                      :
          **Plaintiff,**      :
                                  :      **13 Civ. 221 (HB)**
         **- against -**      :
                                    :      <u>**OPINION & ORDER**</u>
**TOURO COLLEGE OF OSTEOPATHIC**  :
**MEDICINE, JERRY CAMMARATA,**    :
                                    :
          **Defendants.**      :
-------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

      Before the Court is a motion for summary judgment brought by Defendants Touro College of

Osteopathic Medicine ("Touro") and Jerry Cammarata, the Dean of Student Affairs at Touro

(collectively, "Defendants") against Plaintiff Michael Maximilian Wolfgang Roggenbach ("Plaintiff").

Plaintiff alleges that Touro discriminated against him under § 504 of the Rehabilitation Act of 1973, 29

U.S.C. § 794, *et seq.*, ("RHA"), Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182 *et*

*seq.*,("ADA"), Title VI of the Civil Rights Act of 1963 ("Title VI"), the New York State Human Rights

Law, N.Y. Exec. Law § 296(4) ("NYSHRL"), and the New York City Human Rights Law, N.Y.C.

Admin. Code § 8-107(4) ("NYCHRL").  Plaintiff also brings claims against Jerry Cammarata, Touro's

Dean of Student Affairs, under the NYSHRL and the NYCHRL, for aiding and abetting discrimination.

For the following reasons, Defendants' motion is GRANTED.

**Background[1]**

      Plaintiff is a 36-year-old gay male, born in the United States of German national origin,

who has been diagnosed with Human Immunodeficiency Virus (HIV) infection. (56.1 ¶¶ 1, 6,

113; Ex. D, Pl. Dep. 15:2-23; 42-45.) Plaintiff was accepted into the Osteopathic Medicine

program at Touro and began coursework in the fall of 2008. (56.1 ¶¶ 13, 21.)  Notwithstanding

issues with attendance and lateness and a designation of provisional academic status, Plaintiff

was given several opportunities to take make-up exams and remediate failing grades throughout

his time at Touro. *See* Ex. P, Ex. Q, Ex. T, Ex. AG (letters and notices regarding unexcused

absences); *see also* 56.1 ¶¶ 34, 46, 50, 53, 62; Ex. D, Pl. Dep. at 109:4-24, 125: 23 – 126:24,

---

[1] These facts are undisputed unless otherwise noted.

1

Exs. V, X, AI, Y) (Plaintiff permitted to make-up exams and remediate failing grades.) Plaintiff began his clinical rotations at St. John's Episcopal Hospital ("St. John's") in July 2010. (Ex. D, Pl. Dep. 90: 24-25; 56.1 ¶¶ 65, 67.)

In September 2010, Michael Beltrami ("Beltrami"), Plaintiff's former landlord, sent two letters to faculty at Touro and St. John's. (56. 1 ¶¶ 118, 122; Exs. BD, BH.) In the first letter, dated September 10, 2010, Beltrami accused Plaintiff of theft and vandalism, and alluded to Plaintiff being gay. (56. 1 ¶¶ 118,119, Ex. BD.) Touro Dean Robert Goldberg responded by letter that Beltrami should notify the police of any suspected criminal activity and also spoke with Beltrami by phone. (56.1 ¶ 121, Ex. BG, Ex. 3, Goldberg Dep. at 13:25-16:6.) In the second letter, dated September 27, but not mailed until October 1, Beltrami mentioned, among other things, that Plaintiff's rent was paid by "an agency for disabled HIV+ men and women." (56.1 ¶ 122, Ex. BH.)

On September 29 and September 30, 2010, Plaintiff was absent from his clinical rotation at St. John's. (56.1 ¶ 67, Ex. AJ.) Plaintiff claims that he sent emails and text messages to notify his supervisors and team members of his absence, and that he was permitted to miss those days, but no such notices have been located or produced, nor has any other evidence of prior permission. (Def. 56.1 ¶¶ 68, 69, 83; Ex. D, Pl. Dep. 214:12-215:5, Ex. AJ.) Eventually, it turned out that he had concocted an email to cover his failure to notify his supervisors of his impending absence. (Exs. AO, AP, Ex. BC, Formal Hearing Transcript, 27:11-17.) Plaintiff also signed a counseling form, acknowledging that "as of September 30, 2010, [Plaintiff was] currently absent without approved leave" from St. John's. (Ex. AK.) Plaintiff claims he signed the form under duress. (Ex. D, Pl. Dep. 223-227.)  On October 1, 2010, Dr. Al Strojan, Chairman of Family Medicine at St. John's, prepared a reassignment memo for Plaintiff, and on October 5, 2010, he wrote a letter returning Plaintiff to Touro for reassignment to another program. (Exs. AK, AM.)

Pursuant to Touro policy, an informal hearing was conducted on October 6, 2010. (56.1 ¶¶ 16-20,79; Ex. AQ; Ex. M, Touro Student Handbook; Ex. N Touro Clinical Rotations Manual.) The hearing committee decided that Plaintiff would be required to be evaluated and treated by the Committee for Physician Health ("CPH") and that he would be taken off rotations until CPH made a recommendation. (Exs. AQ, AR.)

On March 25, 2011, Plaintiff filed a complaint with the New York State Division of Human Rights. (56.1 ¶ 91; Ex. F.) On March 21, 2011, he filed a complaint with the Commission on Osteopathic College Accreditation. (Def. 56.1 ¶ 91; Ex. AU.) On March 21, 2011, he filed a complaint with the United States Department of Education, Office for Civil Rights. (56.1 ¶ 91; Ex. BE.) In these complaints, he alleged, *inter alia*, that he was discriminated against on the basis of his sexual orientation, HIV status and domestic violence status. (56.1 ¶ 91; Exs. F, AU, BE.) The Commission on Osteopathic College Accreditation found no credible evidence of wrongdoing on the part of Touro. (Ex. AV.) The United States Department of Education Office of Civil Rights found that Plaintiff's complaints were not within its jurisdiction. (Ex. BE.) The New York State Division of Human Rights dismissed Plaintiff's complaint because, *inter alia*, "[t]he complaint intends to pursue this matter by litigation in Federal Court," and "[p]rocessing this complaint will not advance the State's human rights goals." (Ex. G.)

On May 20, 2011, Plaintiff's informal hearing recommenced. (56.1 ¶¶ 91, Ex. AW.) On May 26, 2011, the hearing committee recommended to the Dean that Plaintiff be dismissed from Touro because he "fabricated an email and demonstrated behavior in a hospital setting unbecoming of a student doctor." (56.1 ¶ 97; Ex. AX.) On June 3, 2011, Plaintiff requested a Formal Hearing. (56.1 ¶ 98, Ex. AY.) The Formal Hearing was conducted on August 17, 2011 and Plaintiff was charged with violations of the Touro Code of Conduct including (1) fabrication; (2) furnishing false information to the college; (3) neglect of clinical and hospital duties; and (4) " . . .behavior in a hospital setting unbecoming a student doctor." (56.1 ¶ 101; Ex. BA; Ex. BC, Formal Hearing Transcript, 5:20-6:10.) At the hearing, Plaintiff admitted again to dishonesty and fabrication. (Ex. BC, Formal Hearing Transcript, 27:11-17. (Plaintiff discusses the "things that I readily admit that I did wrong," including "reconstituting an email that I had sent, with the assumption that it was true. That clearly relates to charge number two, which is furnishing false information to the college. In my defense, the lie was sustained for a very short period of time.")) Following this hearing, Plaintiff was dismissed from Touro.

## DISCUSSION

Summary judgment is appropriate "only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011) (quoting Fed. R. Civ. Proc. 56(a)). The Court must "constru[e]

the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Id.* Nevertheless, "summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

## A. Disability Claims Under the ADA and the RHA[2]

"Title III of the ADA prohibits discrimination against individuals 'on the basis of disability in the full and equal enjoyment of the . . . services . . . of any place of public accommodation . . .'" *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008)(quoting 42 U.S.C. § 12182(a)). Courts "examine claims of disability discrimination pursuant to the ADA under the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green.*" *Shepheard v. New York City Corr. Dep't*, 360 F. App'x 249, 250 (2d Cir. 2010). To establish a prima facie case, "[a] Title III claim…requires that a plaintiff establish that (1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA." *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008)(quoting 42 U.S.C. § 12182(a)). Touro does not dispute that it is a place of public accommodation under the Acts.

The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; . . . or (C) being regarded as having such an impairment." 42 U.S.C.A. § 12102(1). "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment…" 42 U.S.C.A. § 12102(3)(A). The ADA Amendments Act of 2008 ("ADAAA") clarified that a "major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system…" 42 U.S.C.A. § 12102(2)(B). "An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C.A. § 12102(4)(D).

---

[2] I consider Plaintiff's claims under the RHA and the ADA together. *See Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85 *opinion corrected on other grounds,* 511 F.3d 238 (2d Cir. 2004)("Since the standards adopted by Titles II and III of the ADA are, in most cases, the same as those required under the Rehabilitation Act, we consider the merits of these claims together.")(internal citations and quotation marks omitted).

Here, Plaintiff has not attempted to demonstrate that his HIV-positive status has inhibited a major life activity. *Cf. Alexiadis v. New York Coll. of Health Professions*, 891 F. Supp. 2d 418, 429 (E.D.N.Y. 2012)(where"[t]he record . . . contain[ed] evidence that plaintiff suffered from various ailments" as a result of his HIV-positive status.) However, this omission is not fatal to Plaintiff's claim. Although he may not show symptoms because his HIV is "episodic or in remission," it may nevertheless "limit a major life activity when active." 42 U.S.C.A. § 12102 (4)(D). Thus, a rational fact finder could conclude that Plaintiff's HIV-positive status is a disability within the meaning of the statute.

Plaintiff also argues that Defendants discriminated against him as the result of a mental impairment, but he makes no suggestion of "how his supposed mental condition substantially limits a major life activity," which is required under the Acts. *Tylicki v. St. Onge,* 297 F. App'x 65, 67 (2d Cir. 2008)(dismissing claims under the Acts); *see also Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516, 521-22, (1999)("[A] person is 'regarded as' disabled within the meaning of the ADA if a covered entity mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities.") However, Plaintiff offers no evidence to show either that Touro regarded him in such a way, or what major life activity would have been limited by his alleged impairment.[3] Thus, a reasonable jury could not find that Plaintiff was "regarded as" having a mental impairment disability under the ADA.

The Plaintiff must also establish that Defendant discriminated against him within the meaning of the ADA, and that this "exclusion or discrimination was due to [his] disability," *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009).[4] Plaintiff argues that the timing of the Beltrami letters supports an inference of discrimination on the basis of his HIV-positive status. The first

---

[3] Even assuming, *arguendo*, that Plaintiff was "regarded as" being substantially limited in his ability to work as a doctor, this is insufficient to establish a disability claim under the ADA. *See Murphy*, 527 U.S. at 523 ("to be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job.")(Citing EEOC regulation interpreting the ADA § 1630.2(j)(3)(i)).

[4] Although the burden of persuasion under the ADA is not clear in this circuit, Plaintiff's claims would fail under either a but-for causation standard or a mixed-motive standard. *See Widomski v. State Univ. of New York (SUNY) at Orange*, 933 F. Supp. 2d 534, 546 n. 9 (S.D.N.Y. 2013)(discussing that "Plaintiff's burden of persuasion is not entirely clear" after the Supreme Court applied but-for causation in the context of the Age Discrimination in Employment Act ("ADEA") in *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167 (2009), because the ADEA and the ADA have parallel statutory language for causation.) In addition, although *Fulton* was based on a Title II ADA claim, courts have also used this framework in analyzing Title III claims. *See Alexiadis v. New York Coll. of Health Professions*, 891 F. Supp. 2d 418, 430, 433 (E.D.N.Y. 2012).

Beltrami letter, dated September 10, 2010 and received by Dean Goldberg on September 21, 2010, does not mention Plaintiff's HIV-positive status. Ex. BD. The second Beltrami letter references Plaintiff's HIV status, but was dated September 27, 2010, and not mailed until October 1, 2010. 56.1 ¶ 122, Ex. BH. By the time the second letter reached the Defendants, Plaintiff had already missed his rotations on September 29 and 30. *See* 56.1 ¶ 67, Ex. AJ. Dr. Al Strojan, Chair of Family Practice at St. John's, inquired into Plaintiff's absences, and as a result prepared a reassignment memo on October 1, noting Plaintiff's unexcused absences, which Plaintiff signed. At the time Dr. Strojan began the reassignment process that would eventually result in Plaintiff's termination, no one at Touro or St. John's had received the Beltrami letter, referencing Plaintiff's HIV status. Plaintiff has failed to establish that any Defendant had any knowledge of Plaintiff's HIV status before the disciplinary process against him began, and any subsequent disciplinary action could not have been "due to" his disability.

Although a demonstration of disparate treatment with respect to similarly situated employees may support an inference of discrimination, "[a] plaintiff relying on disparate treatment evidence must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)(internal citation and quotation marks omitted). Here, Plaintiff has made no such showing, only describing one "loud, aggressive," student, and another student who had stolen a prescription pad from a physician's office and written a prescription to himself. Ex. 3, Goldberg Dep. 46:25-47:1, 34:14-36:18; Ex. 2, Cammarata Dep. 48:3-49:15; Ex 4, Callaghan Dep. 59:9-15. While there is insufficient evidence in the record to establish that Plaintiff was "similarly situated in all material respects" to these students, both of these students appear to have cooperated with Touro's disciplinary process, and neither were accused of dishonesty or cover-up. Further, contrary to his assertions, Plaintiff was given many opportunities to make up and remediate failing grades and missing coursework.

Finally, in order to be "otherwise qualified" under the Acts, Plaintiff must be able, with or without a reasonable accommodation, to complete all of a program's requirements. 29 C.F.R. § 1630.2(m)(Equal Employment Opportunity Commission regulations interpreting the ADA); 45 C.F.R. § 84.3(l)(1)(Health and Human Services regulations interpreting the Rehabilitation Act); *see also Shannon v. New York City Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003). In the context

of a graduate education setting, "a certain degree of deference is owed to the judgment of an academic institution." *el Kouni v. Trustees of Boston Univ.*, 169 F. Supp. 2d 1, 4 (D. Mass. 2001)(citing *Regents of University of Michigan v. Ewing,* 474 U.S. 214, 225 (1985). "Courts are particularly ill-equipped to evaluate academic performance." *Doe v. New York Univ.,* 666 F.2d 761, 776 (2d Cir. 1981)(quoting Board of Curators of University of Missouri v. Horowitz, 435 U.S. 78, 92 (1978)(*superseded by rule in part on other grounds, as recognized in Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 171 n. 7 (2d Cir. 2001). Thus, "considerable judicial deference" is appropriate because "experienced educational administrators and professionals [are better able] to determine an applicant's qualifications and whether he or she would meet reasonable standards for academic and professional achievement established by a university or a non-legal profession." *Doe v. New York Univ.*, 666 F.2d 761, 775-76 (2d Cir. 1981). Here, Plaintiff has admitted to violating Touro's regulations, and deference is proper. *See Doe,* 666 F.2d at 776 ("deference must be paid to the evaluation made by the institution itself, absent proof that its standards and its application of them serve no purpose other than to deny an education to handicapped persons.")

Notwithstanding Plaintiff's HIV-positive status, he has failed to establish a prima facie case under the Acts: Defendants did not have knowledge of his HIV-positive status prior to commencing disciplinary action against him, he has not presented evidence that similarly situated individuals were treated differently, nor that he was otherwise qualified to remain a student. Rather, Defendant demonstrates that Plaintiff was dismissed from Touro because of undisputed violations of the school's code of conduct. *See* Exs. AQ, AX, Ex. BC, Formal Hearing Transcript, 27:11-17.

**B. Retaliation Claims Under the ADA and the RHA**

Courts apply a burden shifting framework to evaluate retaliation claims under the ADA. *See, e.g., Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005); *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998). "[T]he elements of a retaliation claim under either Section 504 or the ADA are (i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the

protected activity and the adverse action." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002)(internal quotations and citation omitted).

Plaintiff's protected activities consist of complaints made with: (1) the New York State Division of Human Rights on March 25, 2011; (2) the Commission on Osteopathic College Accreditation on March 21, 2011; (3) the United States Department of Education on March 21, 2011; and (4) at Touro hearings during May and August of 2011. Where, as is undisputed here, Plaintiff's protected activities took place *after* the disciplinary proceedings against him began, he cannot establish that his protected activity caused the disciplinary proceedings against him. Accordingly, Plaintiff fails to establish the forth prong of a prima facie case for retaliation. *See Kamrowski v. Morrison Mgmt. Specialist*, 2010 WL 3932354 (S.D.N.Y. Sept. 29, 2010)(finding that Plaintiff failed to establish causation for a Title VII retaliation claim, whose elements parallel ADA and RHA retaliation claims, because disciplinary action began prior to her protected activity); *see also Blanc v. Sagem Morpho, Inc.*, 07CV3085(NGG), 2009 WL 1813236 at *15 (E.D.N.Y. June 25, 2009) *aff'd sub nom. Blanc v. Sagem Morpo, Inc.*, 394 F. App'x 808 (2d Cir. 2010)(granting summary judgment and dismissing retaliation claim where Defendant had "warned Plaintiff about his performance deficiencies . . . five months before Plaintiff engaged in any protected activity"). It is impossible that Defendants took disciplinary action beginning in October 2010 because of protected activities that did not begin until March 2011. Without evidence of causation, Plaintiff fails to establish a prima facie case.

## C. National Origin Claims Under Title VI

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C.A. § 2000d. Title VI prohibits only intentional discrimination. *Alexander v. Sandoval*, 532 U.S. 275, 281 (2001). To state a claim of discrimination under Title VI, "the plaintiff must show, *inter alia,* that the defendant discriminated against him on the basis of race, that discrimination was intentional, and that the discrimination was a substantial or motivating factor for the defendant's actions" *Tolbert v. Queens Coll.,* 242 F.3d 58, 69 (2d Cir. 2001)(internal citations and quotation marks omitted). "[I]n the educational setting, a school district is liable for intentional discrimination when it has been 'deliberately indifferent' to teacher or peer

harassment of a student." *Zeno v. Pine Plains Cent. Sch. Dist.,* 702 F.3d 655, 665 (2d Cir. 2012)(internal citations omitted).

Plaintiff, an American-born white male, alleges national origin discrimination based on the fact that during his informal hearing, an administrator stated that Plaintiff had a "brusque, German manner," which could be perceived as aggression, and that this may have led to Plaintiff's "failings and conflicts." Ex. A. Pl. Compl. ¶ 19. Although Plaintiff testified that besides this comment, he did not "hear any comment from anyone at Touro that [he] found to be offensive based on [his] national origin," Ex. D. Pl. Dep. at 50: 17-21, in his opposition brief, he now also alleges that "he was criticized about his German national origin on numerous occasions," that a classmate commented "leave it to the German to not know [what 'kosher' meant]," and that a professor questioned him about his German heritage in an "arrogant tone." Pl. Mem. at 1.

"A plaintiff alleging racial or gender discrimination by a university must do more than recite conclusory assertions. . . the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Manolov v. Borough of Manhattan Cmty. Coll.,* 952 F. Supp. 2d 522, 532 (S.D.N.Y. 2013)(citing *Yusuf v. Vassar Coll.,* 35 F.3d 709, 713 (2d Cir.1994)). A single comment – even if offensive – is not sufficient to uphold a Title VI claim on its own. *See Folkes v. New York Coll. of Osteopathic Med. of New York Inst. of Tech.*, 214 F. Supp. 2d 273, 292 (E.D.N.Y. 2002). Plaintiff's bare allegations are insufficient to sustain a Title VI claim. Even if Plaintiff's allegations of two additional comments are true, they do not rise to the severity required under Title VI. The fact remains that Plaintiff has offered no evidence to suggest that discrimination was a "substantial or motivating factor" in Defendants' decision to take disciplinary action against Plaintiff.

To hold Defendants liable for deliberate indifference, "harassment must be 'severe, pervasive, and objectively offensive.'" *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 665 (2d Cir. 2012)(internal citation omitted). Plaintiff comes nowhere near meeting this threshold, and Defendant's failure to respond to these comments does not constitute deliberate indifference. See *Gant ex rel. Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 142 (2d Cir. 1999)(Defendant's

failure to take "direct responsive action" to a single instance of race-based name calling does not constitute deliberate indifference.)

Further, Plaintiffs' failure to notify Defendants of the alleged discrimination is fatal to his Title VI claim. See *Manolov v. Borough of Manhattan Cmty. Coll.,* 952 F. Supp. 2d 522, 527 n.1 (S.D.N.Y. 2013)("[E]ven if Plaintiff adequately had pleaded discrimination, his apparent failure to notify [Defendant educational institution] officials of the alleged discrimination would be fatal to this Title VI . . . . claims."), *Aoutif v. City Univ. of New York*, 2005 WL 3334277 (E.D.N.Y. Dec. 8, 2005), *see also DT v. Somers Cent. Sch. Dist.,* 348 F. App'x 697, 699 (2d Cir. 2009). Plaintiff does not allege that he notified Touro of any comments, and the comment allegedly made during his informal hearing could not be a "motivating factor" for disciplinary action that was already underway. Thus, a reasonable trier of fact could not conclude that Plaintiff was discriminated against on the basis of his national origin.

### D. NYSHRL & NYCHRL Claims

Having dismissed all of Plaintiff's federal claims, I decline to exercise supplemental jurisdiction over Plaintiff's remaining state and city law claims pursuant to the NYSHRL and the NYCHRL. *Kolari v. New York-Presbyterian Hosp.,* 455 F.3d 118, 122 (2d Cir. 2006) (explaining that " 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims.' ") (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7 (1988); *see also Widomski v. State Univ. of New York (SUNY) at Orange*, 933 F. Supp. 2d 534, 553 (S.D.N.Y. 2013).

### CONCLUSION

I have considered the parties' remaining arguments and find them meritless. For the reasons stated above, Defendants' motion for summary judgment is GRANTED. The Clerk of the Court is instructed to close this motion, close this case and remove it from my docket.


**SO ORDERED.**

**_____, 2014**
**New York, New York**

_____
　　　　　　　　　　**Hon. Harold Baer, Jr.**
　　　　　　　　　　　　**U.S.D.J.**

failure to take "direct responsive action" to a single instance of race-based name calling does not constitute deliberate indifference.)

Further, Plaintiffs' failure to notify Defendants of the alleged discrimination is fatal to his Title VI claim. See *Manolov v. Borough of Manhattan Cmty. Coll.,* 952 F. Supp. 2d 522, 527 n.1 (S.D.N.Y. 2013)("[E]ven if Plaintiff adequately had pleaded discrimination, his apparent failure to notify [Defendant educational institution] officials of the alleged discrimination would be fatal to this Title VI . . . . claims."), *Aoutif v. City Univ. of New York,* 2005 WL 3334277 (E.D.N.Y. Dec. 8, 2005), *see also DT v. Somers Cent. Sch. Dist.,* 348 F. App'x 697, 699 (2d Cir. 2009). Plaintiff does not allege that he notified Touro of any comments, and the comment allegedly made during his informal hearing could not be a "motivating factor" for disciplinary action that was already underway. Thus, a reasonable trier of fact could not conclude that Plaintiff was discriminated against on the basis of his national origin.

### D. NYSHRL & NYCHRL Claims

Having dismissed all of Plaintiff's federal claims, I decline to exercise supplemental jurisdiction over Plaintiff's remaining state and city law claims pursuant to the NYSHRL and the NYCHRL. *Kolari v. New York-Presbyterian Hosp.,* 455 F.3d 118, 122 (2d Cir. 2006) (explaining that " 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims.' ") (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7 (1988); *see also Widomski v. State Univ. of New York (SUNY) at Orange,* 933 F. Supp. 2d 534, 553 (S.D.N.Y. 2013).

**CONCLUSION**

I have considered the parties' remaining arguments and find them meritless. For the reasons stated above, Defendants' motion for summary judgment is GRANTED. The Clerk of the Court is instructed to close this motion, close this case and remove it from my docket.

**SO ORDERED.**

March 13 , 2014
**New York, New York**

**Hon. Harold Baer, Jr.**
**U.S.D.J.**

10
